```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
     EASTERN DIVISION
```

| | | |
|---|---|---|
| AUDREY WESSMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 12 C 6712 |
| | ) | |
| DDB CHICAGO, INC., DDB WORLDWIDE | ) | |
| COMMUNICATIONS, INC., and BRIAN | ) | |
| HURLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

This matter comes before the Court on the motion of Defendants DDB Chicago, Inc. ("DDB Chicago"), DDB Worldwide Communications, Inc. ("DDB Worldwide"), and Brian Hurley ("Hurley") (collectively "Defendants") to dismiss pursuant to Federal Rule Civil Procedure 12(b)(6). For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

DDB Worldwide is an international marketing company with its principal place of business in New York, New York. DDB Chicago is an advertising agency and a subsidiary of DDB Worldwide. Plaintiff Audrey Wessman ("Wessman") was employed with DDB Chicago for intermittent periods between 1997and 2011.

For the purposes of this motion only, we accept as true the well-pleaded allegations of Wessman's complaint. On February 14, 2011 Wessman returned to DDB Chicago as an independent contractor working on the Wrigley account. Upon completion of her assignment, DDB Chicago offered Wessman a contract employee position as an Account Director, effective March 21, 2011. Wessman signed an employment contract with DDB Chicago, specifying her salary.

Wessman accepted the Account Director position on the condition that she be permitted to work 80% of the hours expected for a full time employee in her position ("prior condition"). In exchange Wessman agreed to accept a starting annual salary of $100,000, 30% lower than the compensation she received as an independent contractor. Wessman was assigned to the Safeway account and reported directly to Hurley, a Senior Vice President/Group Business Director at DDB Chicago. After she began it became apparent that Hurley would not permit Wessman to work the reduced hour schedule she had negotiated. Hurley required Wessman to work extended hours on assignments and projects. Hurley also repeatedly scheduled meetings late in the day, which impacted Wessman's ability to pick up her children.

Hurley also engaged in sexist and degrading conduct. On several occasions Hurley spoke about past and present female employees of DDB Chicago in an inappropriate manner. On May 16, 2011, Wessman reported Hurley's sexually inappropriate conduct to Natalie Sundquist ("Sundquist"),Vice President/Director of

Recruiting & Career Development for DDB Chicago, and Don Hoffman ("Hoffman"), Executive Vice President/Global Business Director at DDB Worldwide. Neither Sundquist nor Hoffman expressed any interest in investigating the conduct. Furthermore, Wessman confided in Ewan Paterson ("Paterson"), DDB Chicago's Executive Creative Director, that she was concerned about Hurley's behavior. Paterson cautioned Wessman not to rock the boat because she could get fired.

Recognizing that her concerns would not be remedied, Wessman requested a transfer to the Wrigley account in early June 2011. On June 14, 2011, Wessman elevated her complaints about Hurley to Sundquist's supervisor, Linda Waste ("Waste"), Senior Vice President/Director of Talent Management for DDB Chicago. Wessman discussed with Waste the series of inappropriate conduct perpetrated by Hurley. Waste did not investigate Wessman's allegations. On June 24, 2011 Waste sent Wessman an email stating she was not the right fit for the Wrigley account.

Wessman continued with her complaints to Dick Rogers ("Rogers"), Chairman of DDB North America. Upon hearing of Hurley's conduct, Rogers expressed concern that Hurley's dealings were both unethical and illegal. Rogers implied that he was aware of Hurley's conduct but reminded Wessman that "no one's perfect." Although Rogers implied that he would take care of the matter, to Wessman's knowledge no steps were taken to resolve the problem. Further, Wessman told Hoffman on June 27, 2011 about sexually explicit emails sent by Hurley. No action was taken.

Within days of Wessman's complaints to Waste and Rogers, DDB Chicago's management began exerting pressure on her to resign. Wessman initially succumbed to the mounting pressure to resign, but when she changed her mind, Wessman was abruptly fired on July 5, 2011. Wessman was never given any specific reason for her termination. After her termination, Wessman requested a copy of her personnel file.

Wessman filed a charge with the Equal Employment Opportunity Commission ("EEOC") on September 26, 2011, alleging that she was retaliated against. Wessman named DDB Worldwide as the employer responsible for the conduct and listed DDB Chicago's address. On May 23, 2012, Wessman received a Notice of Right to Sue, from the EEOC. On October 11, 2012, Wessman filed a two count Amended Complaint alleging 1) Retaliation in Violation of Title VII against DDB Chicago and DDB Worldwide and 2) Breach of Contract against all Defendants. Wessman has met all procedural prerequisites to bring the present suit.

LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). When reviewing a motion to dismiss, the court accepts as true all the factual allegations pled in the complaint and draws all reasonable inferences in favor of the nonmoving party. *Id*. Pursuant to Rule 8(a)(2), a complaint must contain "a

'short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the allegations in the complaint must "actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above a speculative level." *Tamayo*, 526 F.3d at 1084 (emphasis in original). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999).

## DISCUSSION

**Count I: Title VII Violation**

**A. DDB Worldwide**

DDB Worldwide asserts that its dismissal is warranted because, as DDB Chicago's parent, they are not liable for the conduct of their subsidiary. It is well established that parent companies are not liable for the actions of their subsidiaries. *See Bright v. Hill's Pet Nutrition, Inc.*, 510 F.3d 766, 771 (7th Cir. 2007); *Isaacs v. Hill's Pet Nutrition, Inc.*, 485 F.3d 383, 385 (7th Cir. 2007). However, Wessman seeks to hold both DDB Chicago and DDB Worldwide liable for violating Title VII as a "single employer." In Title VII cases, the Seventh Circuit relies on the "single employer" test

to show employer liability for employment discrimination claims. *See Worth v. Tyer*, 276 F.3d 249, 260 (7th Cir. 2001) ("[T]his Circuit no longer applies the 'integrated enterprise' test to Title VII claims[,]" citing *Papa v. Katy Ind., Inc.*, 166 F.3d 937, 940-42 (7th Cir. 1999)). Under this test, the affiliated employer forfeits its limited liability status if: 1) the traditional conditions for "piercing the corporate veil" are present; or 2) the corporation took actions to sever the small corporation for the express purpose of avoiding liability; or 3) the corporation directed the discriminatory act, practice, or policy of which the employee is complaining; or 4) the corporation is liable based on the misdeeds of its predecessor through successor liability. *See Worth*, 276 F.3d at 260.

Wessman contends that her complaints to Don Hoffman of DDB Worldwide and Dick Rogers of DDB America constitute sufficient facts, at this stage of the litigation, to warrant finding DDB Worldwide liable for the acts of DDB Chicago. Wessman contends that for the purposes of a motion to dismiss, she has sufficiently pled the necessary requirements for "single employer" liability and further predicts that discovery will ultimately determine if the factors are present to determine a "single employer" relationship. Wessman's reliance on the standard of deference accorded to the facts under Rule 12(b)(6) is misplaced. In Wessman's Amended Complaint she alleges that DDB Worldwide received two complaints from Wessman concerning Hurley's conduct. Wessman does not elicit any facts that could plausibly establish DDB Worldwide's liability for the actions of DDB Chicago. Nor does she specifically

allege which conduct DDB Worldwide has engaged in which would make them liable. Additionally, Wessman does not allege any facts suggesting that any of the requisites for determining a "single employer" relationship can be found. Wessman does not contend that DDB Worldwide instructed DDB Chicago to directly violate Title VII, counseled unlawful acts or increased the probability that unlawful conduct would occur. *Bright*, 510 F.3d at 771. It does not matter that Wessman told managers at DDB Worldwide about problems she was having at DDB Chicago. *Id*. Title VII applies to employers, not to parent companies which merely know about what employers are doing. *See Id*. Accordingly, DDB Worldwide's motion to dismiss Wessman's Title VII claim is granted.

**B. DDB Chicago**

DDB Chicago contends that the Court should dismiss the Title VII claim against it because Wessman failed to name DDB Chicago as the employer responsible for the discrimination in her EEOC charge. Prior to commencing a Title VII lawsuit, a party must file a charge with the EEOC and obtain a right-to-sue letter. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). The purpose of the EEOC charge filling requirement is twofold. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989). First, it provides notice to the charged party of the alleged violation. *Id*. Second, it gives the EEOC an opportunity for conciliation. *Id.* Normally, a party not named in an EEOC charge may not be sued under Title VII. *Tamayo*, 526 F.3d at 1089.

An exception to the general rule exists where "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Schnellbaecher*, 887 F.2d at 126 (quoting *Eggleston*, 657 F.2d at 905). While the information provided in the space for naming the allegedly discriminating party is indicative of the entities against whom the EEOC charges are directed, the analysis does not stop there. *Eggleston*, 657 F.2d at 906. Any party sufficiently named or alluded to in the factual statement portion of the EEOC charges may also be joined as a defendant in a Title VII lawsuit. *Id.*

Although Wessman was represented by counsel during the drafting and submission of her EEOC complaint, DDB Chicago was prominently omitted from the employer box on the first page of the EEOC Charge of Discrimination ("COD") form. In the absence of being formally named on the COD, DDB Chicago contends that they did not receive notice of the charge or have and opportunity to participate in conciliation proceedings. Although the omission of DDB Chicago is striking, its absence is not fatal for the purposes of this motion to dismiss.

Wessman alleges that DDB Chicago was her employer within the meaning of Title VII, for over 15 years. After repeated complaints to members of management about the sexually explicit behavior demonstrated by Hurley, Wessman was asked to

resign from her position at DDB Chicago. After Wessman failed to resign, DDB Chicago terminated her. Wessman specifically mentions DDB Chicago in her EEOC complaint on five occasions. Wessman also included the address of DDB Chicago in the main portion of her EEOC complaint, without giving the address of DDB Worldwide. From these allegations, it is plausible that DDB Chicago had notice of the EEOC charge against them and that they had the opportunity to participate in conciliation proceedings. DDB Chicago's motion for dismissal from Count I is denied.

**Count II: Breach of Contract Claim**

Wessman claims that the Defendants breached her employment contract by requiring her to work a more demanding schedule than she contractually agreed without additional compensation. DDB Chicago contends that the employment contract, made solely between DDB Chicago and Wessman, is a fully integrated contract which lacks any provisions supporting Wessman's claim of breach. DDB Worldwide argues that they were not a party to the contract and cannot be held liable for the actions of its subsidiary DDB Chicago. Hurley argues that he was not a party to the employment contract making the breach of contract claim improper. The Court will address each argument in turn.

## A. DDB Chicago

Wessman alleges that she accepted the March 2011 offer to become a full time employee of DDB Chicago on the condition that she would be able to work a reduced hour schedule. DDB Chicago argues that Wessman has not sufficiently pled a breach of contract claim because the employment contract is unambiguous and is a completely integrated agreement which bars the introduction of prior agreements or negotiations between the parties.

Wessman's breach of contract claim relies on the breach of a condition of accepting employment made prior to signing the employment contract, which was not explicitly incorporated into the final contract. In order to determine if Wessman can state a claim for breach of contract, we must first determine whether the parol evidence rule bars the admission of information concerning a prior contract condition, specifically the reduced work schedule. The parol evidence rule provides that evidence of prior or contemporaneous agreements or negotiations may not be introduced to contradict the terms of a partially of completely integrated writing. *See* Restatement (Second) of Contracts § 215; *Hessler v. Crystal Lake Chrysler-Plymouth, Inc.*, 788 N.E. 2d 405, 412-13 (Ill.App.Ct. 2003). If a writing is determined to be the final expression of the terms of the agreement but not a complete expression of all the terms agreed upon and some terms remain unwritten, the agreement is a partially integrated agreement.

*See* E. Farnsworth, Contracts 452 (1982). If the writing is only partially integrated, evidence of prior or contemporaneous agreements are admissible to supplement its terms, though not to contradict. *See Id.*; Restatement (Second) of Contracts § 215.

Whether a writing is fully integrated is generally a question of law to be resolved by a court. *See Calder v. Camp Grove State Bank*, 892 F.2d 629, 631-32 (7th Cir. 1990). Wessman points to the fact that the employment contract only identifies the "starting annual salary" without providing any specific hourly requirement. When viewing the facts in a light most favorable to Wessman, it is plausible that a material portion of the employment contract, namely the amount of time to be worked, is not contained in the final employment contract. In finding the a material term has been omitted from the contract, the Court finds that the contract is partially integrated. This finding permits prior or contemporaneous agreements to be admitted to supplement the employment contract. Wessman's Amended Complaint alleges that prior to accepting DDB Chicago's full time employment offer, the parties agreed that she would be paid less than her previous salary as an independent contractor, in exchange for a reduced hour requirements. Wessman's prior condition can supplement the contract's absence of an express term concerning the hourly requirements, without contradicting any express term of the agreement. Viewing the facts in the light most favorable to Wessman, the Court finds the presence of a prior condition establishing a reduced work

schedule, and Wessman's allegations that she worked in excess of that prior agreement sufficiently constitutes a breach of contract claim against DDB Chicago.

**B. DDB Worldwide**

Wessman asserts that DDB Worldwide breached her employment contract and should be held liable under the "single employer" theory. Wessman again seeks to utilize the exception to the well settled principle that parent corporations are not liable for the wrongs of their subsidiaries. *See Bright*, 510 F.3d at 771. As noted above, Wessman does not elicit the specific theory or facts which constitute a plausible basis to hold DDB Worldwide liable for the actions of DDB Chicago. In the absence of specific facts that give rise to the possibility of DDB Worldwide's liability, the Court declines the invitation to wait and see what discovery fleshes out. Because the Amended Complaint does not contain allegations which give rise to DDB Worldwide's liability for breach of contract, DDB Worldwide's motion is granted.

**C. Hurley**

Hurley argues that because he was not a party to the employment contract between Wessman and DDB Chicago, he cannot be liable for breach of contract.

Illinois law governs the employment contract between Wessman and DDB Chicago. Under Illinois law, when an individual is not a named party or signatory to the agreement, the individual is not a party to the contract and no contract exists with

the individual. *Smith v. Clark Equip. Co.*, 483 N.E.2d 1006, 1009 (Ill.App. Ct. 1985) (finding plaintiff is not a party to the agreement because plaintiff is not a signatory to the agreement). In a breach of contract claim, a plaintiff must prove that a contract exists. *McCleallan v. Banc Midwest, McLean County*, 517 N.E. 2d 762, 764 (Ill.App. Ct. 1987).

Wessman's complaint does not allege that Hurley had a contractual relationship with her or define Hurley's role in the performance of her employment contract. Wessman has failed to establish that Hurley was a party to Wessman's employment contract. He therefore cannot be held liable for her breach claim. Hurley's motion to dismiss Wessman's breach of contract claim is granted.

## CONCLUSION

For the foregoing reasons, the DDB Worldwide's and Hurley's motion to dismiss is granted, DDB Chicago's motion to dismiss is denied.

*/s/ Charles P. Kocoras*

Charles P. Kocoras
United States District Judge

Dated:   December 13, 2012